**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE COUSTEAU SOCIETY, INC.,<br><br>*Plaintiff*,<br><br>v.<br><br>CELINE COUSTEAU; CELINE COUSTEAU, LLC; FRANCE TV; CAPA PRESSE; and NEWEN DISTRIBUTION,<br><br>*Defendants.* | Civil Action No.:<br><br>**Jury Trial Demanded** |

## COMPLAINT

Plaintiff The Cousteau Society, Inc. ("TCS" unless indicated otherwise), by and through its undersigned counsel, as and for its Complaint against Defendants, Celine Cousteau, Celine Cousteau, LLC, France TV, CAPA Presse, and Newen Distribution (collectively "Defendant(s)" unless indicated otherwise), alleges as follows based on knowledge of its own actions, and on information and belief as to Defendants' actions (unless indicated otherwise):

## NATURE OF THE CASE

1. This lawsuit concerns Defendants' contumacious use of world-famous explorer Jacques-Yves Cousteau's name, image, and iconic red cap to promote a documentary.

2. Plaintiff The Cousteau Society owns the exclusive, worldwide rights to, *inter alia*, Jacques-Yves Cousteau's name, image, and famous red cap.

3. No Defendant is a member of TCS.

4. All Defendants have been on notice of TCS' exclusive, worldwide rights in the aforementioned intellectual property since at least as early as 2017.

5. All Defendants have been on notice since at least as early as 2017 that they do not have TCS' permission, authorization, or consent to use or otherwise exploit TCS' aforementioned intellectual property for any purpose.

6. TCS recently learned that Defendants are knowingly and intentionally trading off of Jacques-Yves Cousteau's name, image, and famous red cap to promote and manufacture interest in the upcoming documentary, "*Celine Cousteau, The Adventure Continues*" (the "Documentary").

7. To ameliorate the harm that Defendants' unlawful activities are causing to TCS, TCS brings this lawsuit against Defendants for: (i) federal trademark infringement in violation of 15 U.S.C. § 1114; (ii) federal trademark infringement in violation of 15 U.S.C. § 1125(a); (iii) federal false association, false designation of origin, and unfair competition in violation of 15 U.S.C. § 1125(a); (iv) trademark infringement under the common law of the State of New York; and (v) unfair competition under the common law of the State of New York.

## THE PARTIES

8. Plaintiff The Cousteau Society, Inc. is a New York not-for-profit corporation with its principal place of business at 732 Eden Way North, Suite E, Number 707, Chesapeake, Virginia 23320.

9. On information and belief, Defendant Celine Cousteau is a resident of the State of California.

10.    On information and belief, Defendant Celine Cousteau LLC is a Delaware limited liability company with an address at 2140 South Dupont Highway, Camden, Delaware 19934.

11.    On information and belief, Defendant France TV is a French public television broadcaster with its principal place of business at TSA n67300, 86963 Futuroscope CEDEX.

12.     On information and belief, Defendant CAPA Presse is a French corporation with its principal place of business at 80 rue de la Croix Nivert, 75015 Paris, France.

13.     On information and belief, Defendant Newen Distribution is a French corporation with its principal place of business at 20, Rue de Houdan, 78610 Le Perray en Yvelines, France.

## JURISDICTION AND VENUE

14.     The claims for trademark infringement, false association, false designation of origin, and unfair competition asserted in Counts I-III, *infra*, arise under the Trademark Act of 1946 (as amended), namely, 15 U.S.C. §§ 1051 *et seq.*  Therefore, this Court has subject matter and original jurisdiction over Counts I-III pursuant to 15 U.S.C. § 1121 and 28 U.S.C §§ 1331 and 1338(a), respectively.

15.     The claims for trademark infringement and unfair competition asserted in Counts IV-V, *infra*, arise under the common law of the State of New York, and are so related to the federal claims asserted in Counts I-III, *infra*, that they form part of the same case or controversy. Therefore, this Court has subject matter jurisdiction over Counts IV-V pursuant to 28 U.S.C §§ 1338(b) and 1367(a), respectively.

16.     Plaintiff TCS, a New York-based not-for-profit corporation, owns the exclusive, worldwide rights to Jacques-Yves Cousteau's name, image, and famous red cap.  As alleged *infra*, Defendant Celine Cousteau committed, and continues committing, a tortious act without the State of New York by deliberately trading off TCS' aforementioned exclusive rights to promote, and manufacture interest in, the Documentary.  TCS' claims arise out of, relate to, and concern Defendant Celine Cousteau's aforementioned conduct, which such Defendant knows and expects, or should reasonably know and expect, is harming, and will continue harming, TCS within the State of New York.  On information and belief, Defendant Celine Cousteau derives

substantial revenue from her regular solicitation and transaction of business in both United States commerce (including within the State of New York) and international commerce. Based on the foregoing, this Court has personal jurisdiction over Defendant Celine Cousteau pursuant to CPLR § 302(a)(3)(i)-(ii).

17.     Plaintiff TCS, a New York-based not-for-profit corporation, owns the exclusive, worldwide rights to Jacques-Yves Cousteau's name, image, and famous red cap.  As alleged *infra*, Defendant Celine Cousteau, LLC committed, and continues committing, a tortious act without the State of New York by deliberately trading off of TCS' aforementioned exclusive rights to promote, and manufacture interest in, the Documentary.  TCS' claims arise out of, relate to, and concern Defendant Celine Cousteau, LLC's aforementioned conduct, which such Defendant knows and expects, or should reasonably know and expect, is harming, and will continue harming, TCS within the State of New York.  On information and belief, Defendant Celine Cousteau, LLC derives substantial revenue from its regular solicitation and transaction of business in both United States commerce (including within the State of New York) and international commerce. Based on the foregoing, this Court has personal jurisdiction over Defendant Celine Cousteau, LLC pursuant to CPLR § 302(a)(3)(i)-(ii).

18.     Plaintiff TCS, a New York-based not-for-profit corporation, owns the exclusive, worldwide rights to Jacques-Yves Cousteau's name, image, and famous red cap.  As alleged *infra*, Defendant France TV committed, and continues committing, a tortious act without the State of New York by deliberately trading off of TCS' aforementioned exclusive rights to promote, and manufacture interest in, the Documentary.  TCS' claims arise out of, relate to, and concern Defendant France TV's aforementioned conduct, which such Defendant knows and expects, or should reasonably know and expect, is harming, and will continue harming, TCS

within the State of New York.  On information and belief, Defendant France TV derives substantial revenue from its regular solicitation and transaction of business in international commerce.  Based on the foregoing, this Court has personal jurisdiction over Defendant Celine Cousteau pursuant to CPLR § 302(a)(3)(ii).

19.      Plaintiff TCS, a New York-based not-for-profit corporation, owns the exclusive, worldwide rights to Jacques-Yves Cousteau's name, image, and famous red cap.  As alleged *infra*, Defendant CAPA Presse committed, and continues committing, a tortious act without the State of New York by deliberately trading off of TCS' aforementioned exclusive rights to promote, and manufacture interest in, the Documentary.  TCS' claims arise out of, relate to, and concern Defendant CAPA Presse's aforementioned conduct, which such Defendant knows and expects, or should reasonably know and expect, is harming, and will continue harming, TCS within the State of New York.  On information and belief, Defendant CAPA Presse derives substantial revenue from its regular solicitation and transaction of business in international commerce. Based on the foregoing, this Court has personal jurisdiction over Defendant CAPA Presse pursuant to CPLR § 302(a)(3)(ii).

20.      Plaintiff TCS, a New York-based not-for-profit corporation, owns the exclusive, worldwide rights to Jacques-Yves Cousteau's name, image, and famous red cap.  As alleged *infra*, Defendant Newen Distribution committed, and continues committing, a tortious act without the State of New York by deliberately trading off of TCS' aforementioned exclusive rights to promote, and manufacture interest in, the Documentary.  TCS' claims arise out of, relate to, and concern Defendant Newen Distribution's aforementioned conduct, which such Defendant knows and expects, or should reasonably know and expect, is harming, and will continue harming, TCS within the State of New York.  On information and belief, Defendant Newen

Distribution derives substantial revenue from its regular solicitation and transaction of business in international commerce. Based on the foregoing, this Court has personal jurisdiction over Defendant Newen Distribution pursuant to CPLR § 302(a)(3)(ii).

21.     As alleged *infra*, Defendants' wrongful acts and conduct occurred in substantial part in this judicial district. Therefore, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2).

22.     A substantial part of TCS' intellectual property that is the subject of this lawsuit is situated in this judicial district. Therefore, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2).

23.     As alleged *supra*, Defendants are subject to personal jurisdiction in this judicial district. Therefore, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(3).

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### I.      Jacques-Yves Cousteau

24.     Jacques-Yves Cousteau was—and remains—the world's most celebrated oceanic explorer, documentarian, and marine conservationist.

25.     In the early 1940s, Mr. Cousteau pioneered underwater filming by co-developing the aqualung and underwater camera, which together allowed divers to stay underwater for then-unprecedented periods while filming.

26.     Thereafter, Mr. Cousteau helmed the French naval research vessel the *Calypso* and her crew (as well as numerous other vessels) for nearly half a century while exploring and researching the world's oceans, seas, and rivers.

27.     Jacques-Yves Cousteau produced more than 120 critically acclaimed television series and specials, documentaries, and films, and authored more than 50 books based on his explorations aboard the *Calypso* and other vessels.

28.     Mr. Cousteau's credits include *Le Monde du Silence*, for which he won the prestigious Palme d'Or Award at the 1956 Festival de Cannes, and the 1957 Academy Award for Best Documentary, Features.

29.     In addition to pioneering underwater filming, Jacques-Yves Cousteau pioneered marine conservation, using his films and documentaries to raise worldwide awareness about the consequences of pollution and other human behavior on the environment.

30.     In recognition of Jacques-Yves Cousteau's conservation efforts, the United Nations bestowed its prestigious International Environmental Prize upon him in 1977.

31.     Mr. Cousteau also served as the Director of the Oceanographic Museum in the principality of Monaco for 30 years.

32.     Before Mr. Cousteau's death in 1997, he also penned the *Bill of Rights for Future Generations*, which aims to protect the Earth for future generations.

33.     A petition seeking codification of Mr. Cousteau's *Bill of Rights* into international law currently has nine *million* signatures.

## II.      TCS and its Intellectual Property Portfolio

### A.      TCS

34.     TCS is a 501c3 not-for-profit corporation, which Jacques-Yves Cousteau established TCS in 1973 to promote and protect his carefully curated legacy, as discussed above.

35.     Jacques-Yves Cousteau's widow, Francine Cousteau, is TCS' President

36.     Jacques-Yves Cousteau's daughter, Diane Cousteau, is a TCS board member; an anthropologist; has earned two master's degrees; and is currently studying at Cambridge.

37.     Jacques-Yves Cousteau's son, Pierre-Yves-Cousteau, is a TCS board member; a scientist; and has earned three master's degrees, including an MBA.

38.     Under the leadership of Francine, Diane, and Pierre-Yves Cousteau, as well as TCS' Board of Directors, TCS has carried on Jacques-Yves Cousteau's legacy by advocating for and promoting oceanic and environmental awareness throughout the world.  Such efforts include, for example:

    a.   UNESCO-Cousteau Ecotechnie Programme ("UCEP").  UCEP is a joint effort between Equipe Cousteau and the renowned UNESCO to promote education, research, and policy-making in the fields of environmental awareness and environmental conservation.

    b.   Cousteau Divers.  Cousteau Divers is an international network of divers who use science, community, and multimedia to raise awareness for the protection of marine life.

    c.   Cousteau Kids.  Cousteau Kids organizes and hosts programs and events at 60 schools throughout the world to educate children about oceanic and environmental conservation.

    d.   The *Calypso*.  As stated *supra*, Jacques-Yves Cousteau's famous ship was the *Calypso*.  In January 2012, the French Maritime and River Heritage Foundation conferred its prestigious *Boat of Heritage Interest Award* on the *Calypso*.  TCS, the exclusive owner of the *Calypso*, has raised millions of dollars to restore the famous vessel, with the ultimate goal of having the vessel sail the oceans once again, raising awareness for oceanic conservation along the way.

    e.   Easter Island.  TCS is leading efforts to plant approximately 1.5 million trees on Easter Island in Chile is a part of a global program to protect and develop Easter Island.

    f.   Vaquita Conservation.  A Vaquita, colloquially known as a porpoise, is the most endangered cetacean in the world.  As part of TCS' partnership with the scientific consortium Oceanides Conservacion y Desarollo Marino, A.C., TCS is using acoustic detectors to collect data about vaquita populations and their movements.

This data will allow conservationists to hopefully develop a plan to preserve--and ultimately increase--the vaquita population.

g.  <u>Costa Rica</u>.  TCS recently entered into a partership with the University of Costa Rica to create the Jacques Cousteau Observatory of Biodiversity, which will coordinate  research amongst universities in South America.

h.  <u>Whales - Wanted Alive</u>.  Building on what Jacques-Yves Cousteau began nearly 30 years ago, TCS is leading efforts throughout the world to enact a moratorium on commercial whaling.

i.  <u>Coastal Protection in Sudan</u>.  TCS conducted a 14-year study of approximately 700 kilometers of the Sudanese Red Coast.  This study culminated in a 600-page report on the Red Coast's biodiversity and marine habitats. TCS is also  leading the Red Sea Shark and Ray Conservation and Management Project, which aims to conduct wider research--and ultimately help preserve--the ecosystem and food web in Sudan.

**B.  TCS' Intellectual Property**

39.  In 1973, TCS rightfully and exclusively acquired the rights to Jacques-Yves Cousteau's worldwide intellectual property portfolio.  These rights included (and include), for example: (i) Mr. Cousteau's trademarks; (ii) Mr. Cousteau's rights of privacy, publicity, and personality; and      (iii) the copyright interests in Mr. Cousteau's myriad films, images, and photographs (collectively, "TCS' Intellectual Property").

40.  During his decades-long career, Mr. Cousteau appeared in countless films, photographs, and other media throughout the world donning a red stocking cap:



41.  The media described (and describes) the red cap as Mr. Cousteau's "signature" and "trademark" look.  *See, e.g.* **Exhibit A**; *see also infra*:



42.    TCS has exploited its exclusive rights in the image of Jacques-Yves Cousteau's famous red cap throughout the world.  For example, as shown in *infra*, *The Jacques Cousteau Odyssey*, and *The Ultimate Jacques Cousteau Collection*, DVD collections prominently feature Mr. Cousteau wearing his famous red cap on their covers:



43.    TCS also expends substantial resources on advertising, marketing, and promoting its benevolent activities under its Intellectual Property, and the marks "THE COUSTEAU SOCIETY"; "COUSTEAU DIVERS"; :COUSTEAU KIDS"; "THE JOURNEY CONTINUES";

"JACQUES-YVES COUSTEAU"; "COUSTEAU"; and "CALYPSO" (the foregoing marks, together the image of Jacques-Yves Cousteau's red cap, the "TCS Marks").

44. The TCS Marks are inherently distinctive.

45. The TCS Marks and Intellectual Property have been the subject of widespread, unsolicited media coverage and critical acclaim throughout the world, including the United States.

46. Because of TCS' extensive advertising, marketing, and promotional efforts, as well as widespread, unsolicited media coverage of TCS and its activities offered under TCS' Marks and Intellectual Property, consumers throughout the world associate TCS' Marks and Intellectual Property uniquely with TCS.

47. The TCS Marks have acquired distinctiveness, and function as strong source identifiers in the marketplace for TCS and its activities.

48. TCS vigorously polices the marketplace for unauthorized uses of its Marks and Intellectual Property. *See generally* **Exhibit B**.

49. For example, it is well known that Walt Disney Pictures paid TCS a substantial monetary penalty for using Mr. Cousteau's red cap in the film, *The Life Aquatic With Steve Zissou*, without TCS' authorization or consent. *See* Exh. B.

50. Members of Jacques-Yves Cousteau's family have expressly acknowledged that TCS owns the exclusive rights to the marks COUSTEAU, JACQUES-YVES COUSTEAU, and CALYPSO, as well as Jacques-Yves Cousteau's name, image, signature, voice, and likeness. *See, e.g.*, Exh. B.

51.     In the course of TCS using and protecting its Marks and Intellectual Property throughout the world, TCS has acquired the following trademark registrations, and filed the following trademark applications, in the United States:

| Mark | U.S. Trademark Reg./Application Ser. Number | Registration/Filing Date | International Class |
|---|---|---|---|
| THE COUSTEAU SOCIETY | 1,630,009 (the "'009 Registration) | January 1, 1991 | 16 for "brochures, books and magazines dealing with topics about undersea exploration and the environment; art posters; postcards; stationery; writing paper and envelopes; decals; paper clothing tags; calendars and stamps" 25 for "clothing, namely t-shirts" 42 "promoting public awareness of the environment and conservation issues and public appreciation of natural resources through the distribution of printed material and information" |
|  | 1,631,391 (the "'191 Registration) | January 15, 1991 | 9 for "pre-record video cassette tapes featuring programs on undersea exploration and the environmental education" 14 for "ornamental pewter lapel pin; belt buckles made of precious metal" |

| Mark | U.S. Trademark Reg./Application Ser. Number | Registration/Filing Date | International Class |
|---|---|---|---|
|  |  |  | 16 for " brochures and books dealing with underseas exploration and the environment; calendars" 25 for "clothing - namely t-shirts and headwear" 28 for "toys - namely a model ship" 42 for "mail order services featuring gifts in the nature of books, posters, prints, calendars, greeting cards, shirts, belts and tote bags" |
| COUSTEAU DIVERS | 4,208,783 (the "'783 Registration) | September 18, 2012 | 41 for "providing educational classes, seminars, and workshops related to the study of the ocean; providing dive training courses" |
|  | 3,330,700 (the "'700 Registration) | November 6, 2007 | 16 for "magazines in the field of children's science, the environment and marine and ocean education" |
| COUSTEAU KIDS | 3,261,940 (the "'940 Registration) | July 10, 2007 | 16 for "magazines" |

| Mark | U.S. Trademark Reg./Application Ser. Number | Registration/Filing Date | International Class |
|---|---|---|---|
|  **The Cousteau Society** | 1,631,392 (the "'392 Registration) | January 15, 1991 | 9 for "phonograph records and prerecorded video cassette tapes featuring programs on undersea exploration and environmental education" 16 for "brochures, books and magazines dealing with topics about undersea exploration and the environment; art posters; postcards; stationery; writing paper and envelopes; decals; paper clothing tags; calendars and stamps" 18 for "tote bags" 25 for "clothing, namely t-shirts and sweatshirts" 41 for "educational services, namely conducting field study training programs and workshops in ocean research and the environment" 42 for "promoting public awareness of the environment and conservation issues and public appreciation of natural resources through the distribution of printed |

| Mark | U.S. Trademark Reg./Application Ser. Number | Registration/Filing Date | International Class |
|---|---|---|---|
| | | | material and information" |
|  | 87/389,097 (the "'097 Application) | March 28, 2017 | 41 for "educational services, namely, conducting classes, seminars, conferences, workshops and field trips in the field of environmental and ocean conservation; membership club services, namely, providing training to the members in the field of environmental and ocean conservation" |
|  | 87/031,573 (the "'573 Application) | April 18, 2017 | 16 for "publications, namely, books, hand-outs and workbooks in the field of environmental and ocean conservation; magazines in the field of environmental and ocean conservation" |
| THE JOURNEY CONTINUES | 88/097,636 (the "'636 Application) | August 29, 2018 | 35 for "promoting public awareness and providing information relating to environmental and oceanic conservation" |
| THE JOURNEY CONTINUES | 88/100,852 (the "'852 Application) | August 31, 2018 | 41 for "production and distribution of videos, films, and digital media" |

52.     Attached hereto as **Exhibit C** are true and correct copies of the '009, '191, '783, '700, '940, and '392 Registration certificates.

53.     The '009, '191, '783, '700, '940, and '392 Registrations, respectively, are in effect, valid, and subsisting.

54.     The '009, '191, '783, '700, '940, and '392 Registrations, respectively, are on the Principal Trademark Register.

55.     The '783, '700, and '940 Registrations, respectively, are *prima facie* evidence of the validity of the mark covered by such Registration.

56.     The '783, '700, and '940 Registrations, respectively, are *prima facie* evidence of the validity of registration of the mark covered by such Registration.

57.     The '783, '700, and '940 Registrations, respectively, are *prima facie* evidence of TCS' ownership of the mark covered by such Registration.

58.     The '783, '700, and '940 Registrations, respectively, are *prima facie* evidence of TCS' exclusive right to use the mark covered by such Registration for the goods and/or services specified in such Registration.

59.     The '009, '191, and '392 Registrations, respectively, are incontestable within the meaning of 15 U.S.C. § 1065.

60.     The '009, '191, and '392 Registrations, respectively, are conclusive evidence of the validity of the mark covered by such Registration.

61.     The '009, '191, and '392 Registrations, respectively, are conclusive evidence of the validity of registration of the mark covered by such Registration.

62.     The '009, '191, and '392 Registrations, respectively, are conclusive evidence of TCS' ownership of the mark covered by such Registration.

63.     The '009,  191, and '392 Registrations, respectively, are conclusive evidence of TCS' exclusive right to use the mark covered by such Registration for the goods and/or services specified in such Registration.

64.     TCS exclusively owns all right, title, and interest in and to the TCS Marks and Intellectual Property.

65.     The TCS Marks and Intellectual Property are valuable assets of TCS.

III.    **Defendants' and Their Unlawful Activities**

   A.    **Defendants**

66.     Defendant Celine Cousteau is one of Jacques-Yves Cousteau's granddaughters.

67.     Defendant Celine Cousteau is not, and never has been, a member of or associated with TCS.

68.     Defendant Celine Cousteau does not have, and has never had, TCS' authorization, permission, or consent to use any of TCS' Marks or Intellectual Property for any purpose.

69.     On information and belief, Defendant Celine Cousteau, LLC is the entity through which Defendant Celine Cousteau, *inter alia*, produces documentaries.

70.     Defendant Celine Cousteau, LLC is not, and never has been, a member of or associated with TCS.

71.     Defendant Celine Cousteau, LLC does not have, and has never had, TCS' authorization, permission, or consent to use any of TCS' Marks or Intellectual Property for any purpose.

72.     Defendant France TV is a public television broadcaster in France.

73.     Defendant France TV is not, and never has been, a member of or associated with TCS.

74. Defendant France TV has not had TCS' authorization, permission, or consent to use any of TCS' Marks or Intellectual Property for any purpose for more than two decades.

75. Defendant CAPA Presse produces and distributes television programs, films, and documentaries.

76. Defendant CAPA Presse is not, and never has been, a member of or associated with TCS.

77. Defendant CAPA Presse does not have, and has never had, TCS' authorization, permission, or consent to use any of TCS' Marks for any purpose.

78. Defendant Newen Distribution distributes television programs, films, and documentaries.

79. Defendant Newen Distribution is not, and never has been, a member of or associated with TCS.

80. Defendant Newen Distribution does not have, and has never had, TCS' authorization, permission, or consent to use any of TCS' Marks for any purpose.

**B.    Defendants' Unlawful Activities**

81. Defendant Celine Cousteau appears in the Documentary.

82. On information and belief, Defendant Celine Cousteau, LLC is an active participant in the creation, direction, marketing, and/or promoting of the Documentary.

83. Defendant France TV is the broadcaster of the Documentary.

84. Defendant CAPA Presse is the producer of the Documentary.

85. Defendant Newen Distribution is the distributor of the Documentary.

86. Defendants are contumaciously using and trading off TCS' Marks and Intellectual Property to manufacture publicity for the Documentary.

87.     For example, the title of the Documentary includes the phrase "The Adventure Continues."

88.     The phrase "The Adventure Continues" is confusingly similar in sight, sound, meaning, connotation, and commercial impression as TCS' well-known THE JOURNEY CONTINUES mark.

89.     As another example of Defendants' unlawful conduct, as shown below, and in **Exhibits D-F**, Defendants are using TCS' copyright-protected images of Jacques-Yves Cousteau; the mark JACQUES-YVES COUSTEAU; and trading off Jacques-Yves Cousteau's legacy to market and promote the Documentary:



90.     As another example of Defendants' unlawful conduct, TCS recently discovered that Defendants are distributing a brochure and press kit for the Documentary to, *inter alia*, TCS' business partners in locations such as Sudan.  *See* **Exhibits G** and **H**.

91.     As shown below, and in Exhibits G and H, Defendants are using a copyright-protected image of Jacques-Yves Cousteau donning his famous red cap, and the mark JACQUES-YVES COUSTEAU, in the Documentary's brochure and press kit to market and promote the Documentary:



92.     TCS demanded in writing in August 2018 that Defendants cease their infringing conduct complained of herein.  In response, Defendants represented in writing that they would not violate TCS' rights.

93.     Contrary to Defendants' representations, their infringing conduct continues.   For example, *after* Defendants represented that they would not violate TCS' rights, TCS discovered that Defendants are distributing the brochure and press kit for the Documentary attached hereto as Exhibits G and H.

94.     Based on the foregoing, TCS seeks this Court's assistance with stopping Defendants' flagrant usurpation of TCS' Marks and Intellectual Property.

## COUNT I
*(Federal Trademark Infringement Under 15 U.S.C. § 1114)*
*(Against All Defendants)*

95.     TCS incorporates paragraphs 1- 94 of the Complaint as though fully set forth herein.

96.     Count I is against all Defendants for trademark infringement in violation 15 U.S.C. § 1114.

97.     Defendants' uses of TCS' Marks and Intellectual Property, as well as the confusingly similar and explicitly misleading phrase "The Adventure Continues," in commerce to advertise, market, promote, distribute, offer for sale and/or sell the Documentary without TCS' consent are likely to cause confusion, cause mistake, and/or deceive consumers into mistakenly believing that Defendants are TCS, or are licensees, authorized distributors, or affiliates or members of TCS, or that Defendants, their activities, and/or their Documentary are authorized, endorsed, sponsored, or approved by TCS, or that Defendants, their activities, and/or their Documentary originate with, are connected with, or are associated with TCS, or vice versa.

98.     Upon information and belief, Defendants are using TCS' Marks and Intellectual Property without TCS' authorization or consent in furtherance of Defendants' willful, deliberate and bad faith efforts to trade off the association between TCS' Marks and Intellectual Property on the one hand, and the exploration-focused goods and services they offer thereunder, on the other hand, to generate turn-key brand recognition for, and interest in, Defendants' exploration-focused Documentary.

99.     Upon information and belief, Defendants have made, and will continue to make, substantial profits and gain from their unauthorized uses of TCS' Marks and Intellectual Property to which they are not entitled in law or equity.

100.     Upon information and belief, Defendants' acts and conduct complained of herein constitute trademark infringement in violation of 15 U.S.C. § 1114.

101.     TCS has suffered, and will continue to suffer, irreparable harm from Defendants' unauthorized uses of TCS' Marks and Intellectual Property unless restrained by law.

102.     TCS no adequate remedy at law.

**COUNT II**
*(Trademark Infringement Under 15 U.S.C. § 1125(a))*
*(Against All Defendants)*

103.     TCS incorporates paragraphs 1- 102 of the Complaint as though fully set forth herein.

104.     Count II is against all Defendants for trademark infringement in violation of 15 U.S.C. § 1125(a).

105.     Defendants' uses of TCS' Marks and Intellectual Property, as well as the confusingly similar and explicitly misleading phrase "The Adventure Continues," in commerce to advertise, market, promote, distribute, offer for sale and/or sell the Documentary without TCS' consent are likely to cause confusion, cause mistake, and/or deceive consumers into mistakenly believing that Defendants are TCS, or are licensees, authorized distributors, or affiliates or members of TCS, or that Defendants, their activities, and/or their Documentary are authorized, endorsed, sponsored, or approved by TCS, or that Defendants, their activities, and/or their Documentary originate with, are connected with, or are associated with TCS, or vice versa.

106.     Upon information and belief, Defendants are using TCS' Marks and Intellectual Property without TCS' authorization or consent in furtherance of Defendants' willful, deliberate and bad faith efforts to trade off the association between TCS' Marks and Intellectual Property on the one hand, and the exploration-focused goods and services they offer thereunder, on the other

hand, to generate turn-key brand recognition for, and interest in, Defendants' exploration-focused Documentary.

107.   Upon information and belief, Defendants have made, and will continue to make, substantial profits and gain from their unauthorized uses of TCS' Marks and Intellectual Property to which they are not entitled in law or equity.

108.   Upon information and belief, Defendants' acts and conduct complained of herein constitute trademark infringement in violation of 15 U.S.C. § 1125(a).

109.   TCS has suffered, and will continue to suffer, irreparable harm from Defendants' unauthorized uses of TCS' Marks and Intellectual Property unless restrained by law.

110.   TCS no adequate remedy at law.

111.   Plaintiffs have no adequate remedy at law.

### COUNT III
*(False Association, False Designation of Origin, and*
*Unfair Competition Under 15 U.S.C. § 1125(a))*
*(Against All Defendants)*

112.   TCS incorporates paragraphs 1- 111 of the Complaint as though fully set forth herein.

113.   Count III is against all Defendants for false association, false designation of origin, and unfair competition in violation of 15 U.S.C. § 1125(a).

114.   Defendants' uses of TCS' Marks and Intellectual Property, as well as the confusingly similar and explicitly misleading phrase "The Adventure Continues," in commerce to advertise, market, promote, distribute, offer for sale and/or sell the Documentary without TCS' consent are likely to cause confusion, cause mistake, and/or deceive consumers into mistakenly believing that Defendants are TCS, or are licensees, authorized distributors, or affiliates or

members of TCS, or that Defendants, their activities, and/or their Documentary are authorized, endorsed, sponsored, or approved by TCS, or that Defendants, their activities, and/or their Documentary originate with, are connected with, or are associated with TCS, or vice versa.

115.   Upon information and belief, Defendants are using TCS' Marks and Intellectual Property without TCS' authorization or consent in furtherance of Defendants' willful, deliberate and bad faith efforts to trade off the association between TCS' Marks and Intellectual Property on the one hand, and the exploration-focused goods and services they offer thereunder, on the other hand, to generate turn-key brand recognition for, and interest in, Defendants' exploration-focused Documentary.

116.   Upon information and belief, Defendants have made, and will continue to make, substantial profits and gain from their unauthorized uses of TCS' Marks and Intellectual Property to which they are not entitled in law or equity.

117.   Upon information and belief, Defendants' acts and conduct complained of herein constitute false association, false designation of origin, and unfair competition in violation of 15 U.S.C. § 1125(a).

118.   TCS has suffered, and will continue to suffer, irreparable harm from Defendants' unauthorized uses of TCS' Marks and Intellectual Property unless restrained by law.

119.   TCS no adequate remedy at law.

120.   Plaintiffs have no adequate remedy at law.

## COUNT IV
*(Trademark Infringement Under New York Common Law)*
*(Against All Defendants)*

121.    TCS incorporates paragraphs 1- 120 of the Complaint as though fully set forth herein.

122.    Count IV is against all Defendants for trademark infringement in violation of the common law of the State of New York.

123.    Defendants' uses of TCS' Marks and Intellectual Property, as well as the confusingly similar and explicitly misleading phrase "The Adventure Continues," in commerce to advertise, market, promote, distribute, offer for sale and/or sell the Documentary without TCS' consent are likely to cause confusion, cause mistake, and/or deceive consumers into mistakenly believing that Defendants are TCS, or are licensees, authorized distributors, or affiliates or members of TCS, or that Defendants, their activities, and/or their Documentary are authorized, endorsed, sponsored, or approved by TCS, or that Defendants, their activities, and/or their Documentary originate with, are connected with, or are associated with TCS, or vice versa.

124.    Upon information and belief, Defendants are using TCS' Marks and Intellectual Property without TCS' authorization or consent in furtherance of Defendants' willful, deliberate and bad faith efforts to trade off the association between TCS' Marks and Intellectual Property on the one hand, and the exploration-focused goods and services they offer thereunder, on the other hand, to generate turn-key brand recognition for, and interest in, Defendants' exploration-focused Documentary.

125.    Upon information and belief, Defendants have made, and will continue to make, substantial profits and gain from their unauthorized uses of TCS' Marks and Intellectual Property to which they are not entitled in law or equity.

25

126.    Upon information and belief, Defendants' acts and conduct complained of herein constitute trademark infringement in violation of the common law of the State of New York.

127.    TCS has suffered, and will continue to suffer, irreparable harm from Defendants' unauthorized uses of TCS' Marks and Intellectual Property unless restrained by law.

128.    TCS no adequate remedy at law.

129.    Plaintiffs have no adequate remedy at law.

### COUNT V
*(Unfair Competition Under New York Common Law)*
*(Against All Defendants)*

130.    TCS incorporates paragraphs 1- 129 of the Complaint as though fully set forth herein.

131.    Count V is against all Defendants for unfair competition in violation of the common law of the State of New York.

132.    Defendants' uses of TCS' Marks and Intellectual Property, as well as the confusingly similar and explicitly misleading phrase "The Adventure Continues," in commerce to advertise, market, promote, distribute, offer for sale and/or sell the Documentary without TCS' consent are likely to cause confusion, cause mistake, and/or deceive consumers into mistakenly believing that Defendants are TCS, or are licensees, authorized distributors, or affiliates or members of TCS, or that Defendants, their activities, and/or their Documentary are authorized, endorsed, sponsored, or approved by TCS, or that Defendants, their activities, and/or their Documentary originate with, are connected with, or are associated with TCS, or vice versa.

133.    Upon information and belief, Defendants are using TCS' Marks and Intellectual Property without TCS' authorization or consent in furtherance of Defendants' willful, deliberate and bad faith efforts to trade off the association between TCS' Marks and Intellectual Property on

the one hand, and the exploration-focused goods and services they offer thereunder, on the other

hand, to generate turn-key brand recognition for, and interest in, Defendants' exploration-focused

Documentary.

134.    Upon information and belief, Defendants have made, and will continue to make,

substantial profits and gain from their unauthorized uses of TCS' Marks and Intellectual Property

to which they are not entitled in law or equity.

135.    Upon information and belief, Defendants' acts and conduct complained of herein

constitute unfair competition in violation of the common law of the State of New York.

136.    TCS has suffered, and will continue to suffer, irreparable harm from Defendants'

unauthorized uses of TCS' Marks and Intellectual Property unless restrained by law.

137.    TCS no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, based on the foregoing, TCS prays for judgment against Defendants as

follows:

A.    A Declaration that Defendants, by their actions, alleged herein, have infringed and

violated TCS' Marks and Intellectual Property;

B.    An Order preliminarily and permanently enjoining and restraining Defendants,

their parents, subsidiaries, divisions, branches, affiliates, predecessors or successors-in-interest,

and any entities acting or purporting to act for or on behalf of any of the foregoing, including any

agents, employees, representatives, officers, directors, servants, and partners, and those persons

in active concert or participation with them, from manufacturing, producing, publishing,

distributing, supplying, licensing, using, copying, reproducing, advertising, promoting,

displaying, offering for sale, selling, and/or otherwise exploiting any good or service bearing any mark or other designation identical or confusingly similar to any of TCS' Marks;

C.      An Order preliminarily and permanently enjoining and restraining Defendants, their parents, subsidiaries, divisions, branches, affiliates, predecessors or successors-in-interest, and any entities acting or purporting to act for or on behalf of any of the foregoing, including any agents, employees, representatives, officers, directors, servants, and partners, and those persons in active concert or participation with them, from engaging in any acts of trademark infringement, false designation of origin, or unfair competition utilizing any mark or other designation identical or confusingly similar to any of TCS' Marks on or in connection with any goods or services;

D.      An Order directing Defendants to remove TCS' Marks, or any colorable imitation(s) thereof, from all of Defendants' goods and services, as well as any other web sites or promotional materials, whether electronic, printed or otherwise, under Defendants' direct or indirect dominion or control;

E.      An Order, pursuant to 15 U.S.C. § 1118, directing the seizure, delivery and destruction of each good and service within Defendants' possession, custody or control that infringes or violates TCS' rights in and to its Marks;

F.      An Order requiring Defendants to account for and pay over to TCS (i) any and all profits derived by Defendants from their infringement or violation of TCS' Marks as alleged herein, and (ii) all damages sustained by TCS as a direct and/or proximate result of Defendants' infringement or violation of TCS' Marks as alleged herein, in amounts to be determined at trial;

G.      A Declaration that this case is "exceptional" within the meaning of 15 U.S.C. § 1117, and awarding TCS its reasonable costs and attorneys' fees based thereon;

H.      An Order awarding TCS statutory and punitive damages;

I.      An Order awarding TCS pre-judgment interest; and

J.      An Order awarding TCS any further relief this Court shall deem just and equitable.

## **JURY DEMAND**

Pursuant to Rules 38(b) and 38(c) of the Federal Rules of Civil Procedure, TCS requests a trial by jury for all issues so triable.

Dated: September 13, 2018
        New York, New York                      Respectfully submitted,

                                                HUNTON ANDREWS KURTH LLP

                                                /s/ James E. Rosini
                                                James E. Rosini
                                                Jonathan W. Thomas
                                                200 Park Avenue
                                                New York, New York 10166
                                                Tel.: (212) 425-7200
                                                Tel.: (917) 239-0290
                                                Fax: (212) 425-5288
                                                Email: JRosini@HuntonAK.com
                                                Email: JThomas@HuntonAK.com

                                                *Attorneys for Plaintiff*